UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CRIMINAL ACTION NO. 0:19-CR-13-DLB

UNITED STATES OF AMERICA,                                            PLAINTIFF,

V.                          **RECOMMENDED DISPOSITION**

FRANKLIN K. CERTAIN,                                                 DEFENDANT.

*** *** *** ***

Franklin Certain moves to suppress evidence seized during a search incident to his arrest, and evidence seized during the execution of a subsequent search warrant. [R. 14]. The United States responded in opposition, and Certain has replied. [R. 18, 19]. A suppression hearing was conducted on January 21, 2020. [R. 22]. For the reasons set forth below, the undersigned recommends that Certain's motion to suppress be denied because the Court finds no violation of his Fourth Amendment rights.

## I. FACTS AND PROCEDURAL HISTORY

On April 21, 2019 at approximately 11:08 p.m., Officer Eric Homan, of the Ashland Police Department, was dispatched to 1228 Gallaher Drive in Ashland, Kentucky to respond to an animal complaint made by one of Certain's neighbors. Upon arrival, Homan learned that the neighbor's cat had been attacked by two unleashed pit bull dogs. Homan and Danielle Childers of Boyd County Animal Control verified that the cat's injuries were extensive. The caller informed that the dogs' owner was her neighbor, Frank Certain, who lived next door at 1226 Gallaher Drive.

When Homan arrived at Certain's residence he ran the license plate from his car and learned that there was a warrant for his arrest from Boyd County Circuit Court for failure to

appear. Upon knocking on the front door, he was met by Certain who denied his dogs had made any attack. Homan informed him there was a warrant for his arrest and that he would have to come with him. Certain refused, asking if he could be cited instead and turn himself in at a later date. Homan told him that was not an option. Certain retreated back into his home, attempting to close the door on Homan. A violent struggle ensued as Homan fought with Certain to prevent him from closing the door. While this occurred, Certain made several furtive movements into his pants and took off the jacket he was wearing. Certain was also yelling to a woman that had been situated toward the back of the residence. Certain's refusal to cooperate led Homan to deploy his taser, which was effective to the extent that Certain submitted to Homan and allowed for him to be handcuffed on the floor inside of his residence.

Homan heard the shower start and ran to investigate the other person in the residence. A woman told him that she needed to get dressed and would eventually exit. Homan then ran back to Certain, where he located and picked up the jacket that had been discarded to the floor during the struggle. Having felt something large in the chest pocket, Homan opened and discovered a large wad of cash. He also saw a small bag of green leafy substance in plain view on the floor in front of the couch, as well as a black backpack located on the side of the couch in front of the TV.

Officer Aaron Helms, Sergeant B. Horn, and Lieutenant E. Taylor also responded to Homan's call. Upon arriving, Helms read Certain his *Miranda* rights and attempted to question him about the black backpack. Certain denied ownership. He was then taken to the Boyd County Detention Center for booking while Homan and the other two law enforcement agents located and questioned the woman that Certain had been yelling for earlier. In the front room where Certain had been arrested the agents located the the bag with the green leafy

substance and black backpack on the floor. They applied for a search warrant to search the backpack and the remainder of the premises. In support of his application for a search warrant for Certain's residence, the officer stated:

> On 04/21/2019 at approximately 1143 hrs I was responding to an animal complaint in the area. I made contact with Franklin Certain, Jr at 1228 Gallaher Drive during the complaint and learned he was wanted in Boyd District Court for FTA. Certain was ordered out of his residence. Certain resisted arrested and attempted to flee back into the residence and close the door on this officer. During the struggle, Certain was observed taking a jacket off and digging into his pockets.
>
> Following Kenneth Franklin Certain, JR's arrest in the front room of the residence, a large sum of cash, baggy of marijuana, and a backpack with several locks consistent with drug trafficking was also observed in his wing span. A female . . . was found in a bathroom and admitted to taking her purse in the shower with her during the struggle and its entire contents were wet. [ . . . ] was manifestly intoxicated by drugs and admitted to using Heroin and Suboxone this date. [. . . ] is a fugitive from Justice and wanted by the state of Ohio for drug charges.

[R. 18-1; Page ID#: 62].

As a result of the search, the officers found ten bags containing suspected methamphetamine, among other items. [R. 18-1; Page ID#: 63].

On October 17, 2019, a federal grand jury returned a four-count indictment against Certain, charging him with various methamphetamine related offenses due to the evidence discovered during the search warrant's execution. [R. 1].

## II.   DISCUSSION

Certain moves to suppress evidence of the marijuana found in a baggy on the floor of his home, and United States currency found in his jacket pocket. He argues that these items were seized in violation of his Fourth Amendment rights, and the subsequent search warrant which was issued based upon the discovery of these items was therefore invalid. As a result,

he contends that all evidence obtained during the search warrant execution should be suppressed as well.

Certain's claims are based on the Fourth Amendment to the United States Constitution, which guarantees the right of the people to be secure in their persons against unreasonable searches and seizures. U.S. CONST. amend. IV. In applying the Amendment, courts have recognized that nowhere "is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home." *Payton v. New* 445 U.S. 573, 589-90 (1980). Indeed, it is widely recognized that physical entry of the home is "the chief evil" against which the protections of the Fourth Amendment apply. *United States v. United States Dist. Ct.*, 407 U.S. 297, 313 (1972). Because of this special emphasis of protection, warrantless entry by governmental actors will be considered presumptively unreasonable. *Payton,* 445 U.S. at 586; *see also Johnson v. United States*, 333 U.S. 10, 13-14 (1948). However, this presumption of unreasonableness may be rebutted by a showing that a specific exception to the warrant requirement applies in the particular case under consideration requirement. *See e.g.*, *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973); *Chimel v. California*, 395 U.S. 752 (1969); *Terry v. Ohio*, 392 U.S. 1 (1968); *McDonald v. United States*, 335 U.S. 451 (1948); *Carroll v. United States*, 267 U.S. 132 (1925). Importantly, even though these exceptions exist, the Sixth Circuit has noted that "those [] are few in number and carefully delineated." *United States v. Archibald*, 589 F.3d 289, 294 (6th Cir. 2009). "Even while carving out th[e] exceptions, the reaffirm[ing] principle [is] that the 'police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure[.]'" *Id*. (citing *Terry,* 392 U.S. at 20; *Chimel,* 395 U.S. at 762).

A. **Entry into Certain's Residence**

In this case there is no dispute regarding the legality of officer Homan's physical entry into the home, or the existence of a valid warrant for Certain's arrest. As such, the undersigned begins analysis of the issues in this case by finding the officer's entry to be lawful, as it has long been settled that a law enforcement officer's entry into a person's home is justified when a valid arrest warrant exists to apprehend the suspect. *Steagald v. United States*, 451 U.S. 204, 213-15 (1981).

B. **Plain-view of the Marijuana**

It is uncontradicted that there was a baggy filled with green leafy substance lying on the floor of the front room which Homan believed was marijuana, directly across from where Certain was arrested. Having found the officer's entry into the home to be authorized by law, and because the marijuana was in plain view, Certain's motion seeking to suppress the marijuana must be denied.

The Supreme Court has held that under certain circumstances the police may seize evidence in plain view without a warrant. *United States v. McLevain,* 310 F.3d 434, 438 (6th Cir. 2002) (citations omitted). "To invoke the plain view doctrine, evidence must be '(1) in plain view; (2) of a character that is immediately incriminating; (3) viewed by an officer lawfully located in a place from where the object can be seen; and (4) seized by an officer who has a lawful right of access to the object itself.' " *Shamaeizadeh v. Cunigan,* 338 F.3d 535, 549 (2003) (citing *United States v. Roark,* 36 F.3d 14, 18 (6th Cir. 1994)).

Here, there is no dispute that the marijuana baggy was in plain view and its character was immediately incriminating. Homan was lawfully present in Certain's residence and had a lawful right to access the object on the floor near where Homan was restrained.

Accordingly, this item should not be suppressed.

### C. The Cash in Certain's Jacket

The next inquiry concerns the sum of cash discovered in Certain's front jacket pocket. Certain argues that the search of his jacket, revealing $4,362 in cash, cannot be justified as a search incident to arrest because Certain was not in the residence when Homan found the money; thus, no applicable exceptions exist. However, the uncontradicted testimony from the hearing demonstrates that the search occurred in Certain's presence, when he had already been handcuffed, and the search was incident to his arrest.

A search incident to a lawful arrest is one of the Fourth Amendment's exceptions to the warrant requirement. "The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations.'" *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (internal citations omitted). In further justifying this exception, the Supreme Court stated that this kind of search may occur "only [in] the space within an arrestee's 'immediate control,' meaning 'the area from within which he might gain possession of a weapon or destructible evidence.'" *Chimel*, 395 U.S. at 763. However, "[o]nce law enforcement officers have [exclusive control over] personal property not immediately associated with the person of the arrestee..., and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest." *United States v. Chadwick*, 433 U.S. 1, 15 (1977) *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991).

Certain does not challenge the lawfulness of the arrest but submits that he was removed prior to the search of the jacket. This, however, is contrary to the evidence developed at the

suppression hearing. The uncontradicted evidence from the suppression hearing established that in the struggle to enter the residence, Officer Homan deployed his taser to subdue Certain, who was struggling to escape the officer's efforts to execute an arrest warrant. In the course of that activity, Certain was anxious to remove and throw to the floor a jacket he was wearing. Upon entry, the officer was faced with further securing Homan who, although he had been tased, was able to warn an unknown female in the residence of the officer's presence. In addition, within the residence were two pit bulls roaming free, and a bag of marijuana on the floor. As a result, Officer Homan testified that upon entry he was able to determine the female's location before returning to the front room to pick up Certain's jacket, discovering the money. This female subsequently emerged with her purse completed soaked with water from being in the shower and was determined to be impaired.

     Given this factual scenario, it is evident that the search of the jacket and the discovery of the currency occurred as part of a search incident to arrest. As stated above, a search incident to a lawful arrest is one of the Fourth Amendment's exceptions to the requirement that any search be pursuant to a validly issued warrant. The exception arises from the dual interests of allowing officers to conduct that limited search while arresting an individual in order to ensure their own safety from harm and simultaneously secure any evidence from the danger of destruction. *See Gant*, 556 U.S. at 338. In summary, the facts of this case lead to the conclusion that the search of the jacket was conducted incident to a valid arrest, for the purpose of ensuring the officer's safety in this rapidly developing situation while simultaneously preserving evidence from destruction, whether from Certain, the unknown female, or the pit bulls roaming free within the residence.

**D. The Search Warrant**

Certain's only remaining challenge is that the affidavit for the search warrant contained reference to the marijuana and cash found in the search as part of the probable cause for issuance of the warrant. Absent these references, he states that the warrant affidavit would have been factually insufficient to establish probable cause. He does not allege that the officer placed misleading information in the affidavit, causing the issuing judge to rely on them when determining whether probable cause existed. In any case, the Court has already determined that the items searched were properly discoverable, and thus this argument fails.

### III. RECOMMENDATION

For the reasons above, the marijuana and currency should not be suppressed. In addition, any argument that the items seized subsequent to the search warrant is without merit. *See Wong Sun v. United States,* 371 U.S. 471, 484–85 (1963). Consequently,

IT IS RECOMMENDED that Certain's motion to suppress [R. 14] be DENIED.

\*\*\* \*\*\* \*\*\* \*\*\*

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another

party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(1).

Signed January 31, 2020.



Signed By:
Edward B. Atkins   EBA
United States Magistrate Judge