# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# AT ASHLAND

**CRIMINAL ACTION NO. 19-13-DLB-EBA**

**UNITED STATES OF AMERICA**                                           **PLAINTIFF**

**v.**          **ORDER ADOPTING RECOMMENDED DISPOSITION**

**FRANKLIN K. CERTAIN, JR.**                                          **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court upon Magistrate Judge Edward B. Atkins's Recommended Disposition, (Doc. # 23), wherein he recommends that Defendant Franklin Certain's Motion to Suppress, (Doc. # 14), be denied. Defendant having filed Objections, (Doc. # 28), to the Recommended Disposition, and the Government having responded to Defendant's Objections, (Doc. # 29), the Recommended Disposition is now ripe for the Court's review. For the reasons set forth herein, Defendant's Objections are **overruled**, and the Motion to Suppress **denied**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 21, 2019, Officer Eric Homan of the Ashland Police Department responded to an animal complaint from a resident of 1228 Gallaher Drive in Ashland, Kentucky. (Doc. # 23 at 1). Animal Control Officer Danielle Childers accompanied Homan to the scene. (Doc. # 18-2 at 1). Upon arrival, Officer Homan noticed a badly wounded cat, (Doc. # 26 at 24:12–14), and the resident informed Homan that her next-door neighbor, Frank Certain, had allowed his two pit bull dogs to roam unleashed, which resulted in her cat being injured and attacked. (Doc. # 23 at 1). Officer Homan then went

1

next door to Certain's residence, knocked on the door, and spoke to Certain about the animal complaint involving his dogs. (Doc. # 26 at 24:23–25:6). Certain produced his driver's license to Officer Homan at his request, and Homan then learned through dispatch that there was a warrant for Certain's arrest. (Doc. # 18-2 at 1). At that time, Certain was standing in the doorway of his residence with the door partially open and his pit bulls going in and out of the doorway between his feet. (Doc. # 26 at 25:12–21).

Officer Homan informed Certain there was a warrant for his arrest and that he would need to come with him, but Certain protested and asked to receive a citation to appear instead. (Doc. # 23 at 2). Within the next few minutes, chaos transpired inside the residence. Certain refused to comply with Officer Homan's order and attempted to close his front door to retreat into his home, and a physical struggle ensued in the doorway. (Doc. # 26 at 26:3–7). During that struggle, Certain removed a jacket he was wearing and at one point placed his hands into his pockets. *Id*. at 31:14–22. Officer Homan deployed his taser and after some slight resistance, Certain placed his hands behind his back on the ground, and Homan was able to handcuff him in the front room of the residence. *Id*. at 26:11–19; 31:23–25. At some point during this altercation, Certain called out to someone, and Officer Homan heard a shower start and movement in the back bedroom of the residence. *Id*. at 32:1–6. After this, Officer Homan called for backup. *Id*. at 32:5–11.

When Officer Aaron Helms arrived on the scene, Certain was kneeling on the floor of the front room, handcuffed, and Officer Helms assisted Certain to his feet. *Id*. at 6:2–6. Officer Helms read Certain his *Miranda* rights. *Id*. at 12:13–15. Two supervising officers also arrived on the scene. *Id*. at 6:5–8;16:22–17:4. At some point while officers

2

and Certain were at the residence, there was a discussion about a bag of green leafy substance believed to be marijuana on the floor in the front room. *Id*. at 7:16–22; 33:13–15. This bag of marijuana was in plain sight, as Animal Control Officer Childers, who had accompanied Officer Homan to the residence to deal with the unleashed dog situation, pointed the bag out to Homan as she was dragging the pit bulls into a kennel. *Id*. at 35:13–17. Officers also noticed a locked black backpack on the floor. *Id*. at 7:13–14. After briefly speaking with the woman in the shower in the back bedroom, Officer Homan promptly returned to the front room, picked up the jacket Certain had removed during the struggle, felt something in the jacket, and discovered a large sum of currency, $4,362. *Id*. at 33:18–25; (Doc. # 18-2 at 1). However, Officer Homan was not one hundred percent sure whether Certain was still in the room with the officers or had already been secured in the police car in the driveway at the time the cash was found inside the jacket. Officer Homan testified that he could not specifically recall if he searched the jacket while Certain was in the living room in the custody of Officer Helms, or if Certain had already been removed to the police car. *Id*. at 58:12–23.

After securing Certain in the police vehicle, Officer Helms transported him to the Boyd County Detention Center. *Id*. at 6:10–12. The officers conducted no further searches of the property until after obtaining a search warrant. *Id*. at 52:10–13. Upon the issuance of a search warrant the next day, Officer Homan discovered and seized ten bags of methamphetamine found inside the locked black backpack. (Doc. # 18-1 at 5). A few months later, on October 10, 2019, a federal grand jury indicted Certain on four counts related to the discovery of methamphetamine in the residence and two prior sales of methamphetamine alleged made by Certain. (Doc. # 1).

On January 3, 2020, Defendant Certain filed a Motion to Suppress (Doc. # 14) the evidence seized upon his arrest, namely the marijuana found on the floor and the cash found in the jacket pocket. He argues that these items were seized in violation of his Fourth Amendment rights, and the subsequent search warrant which was issued based on the discovery of those items was therefore invalid. After the United States filed its Response, and Certain replied, (Docs. # 18 and 19), Judge Atkins held an evidentiary hearing. (Doc. # 22). On January 31, 2020, Judge Atkins filed his Recommended Disposition, (Doc. # 23), wherein he recommended that Defendant Certain's Motion to Suppress, (Doc. # 14), be denied. On February 14, 2020, Certain filed an Objection, (Doc. # 28), and the United States responded to this Objection on February 26, 2020, (Doc. # 29). The Motion to Suppress, (Doc. # 14), and the Recommended Disposition, (Doc. # 23), are now ripe for review.

## II. ANALYSIS

### A. Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59, a district court may refer a motion to suppress to a magistrate judge for the preparation of a report and recommendation. "The magistrate judge must promptly conduct the required proceedings and enter on the record a recommendation for disposing of the matter, including any proposed findings of fact." FED. R. CRIM. P. 59(b)(1). If a party files timely objections to the recommendation, the district court must consider those objections de novo and "accept, reject, or modify the recommendation." FED. R. CRIM. P. 59(b)(3). Failure to object to a Magistrate Judge's findings or conclusions results in waiver of those objections. FED. R. CRIM. P. 59(b)(2).

"The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). Therefore, objections to a magistrate judge's recommendation must be "specific." FED. R. CRIM. P. 59(b)(2). Vague, general, or conclusory objections are improper, will not be considered by the reviewing court, and are "tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001); *see also Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("[A] general objection to a magistrate's report, which fails to specify the issues of contention, does not satisfy the requirement that an objection be filed. The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious."). Objections that merely state disagreements with the magistrate judge's conclusion or restate arguments previously presented to the magistrate judge are similarly improper. *United States v. Bowers*, No. 0:06-cv-7-DLB-REW, 2017 WL 6606860, at *1 (E.D. Ky. Dec. 26, 2017); *United States v. Vanover*, No. 2:10-cr-14-DLB-REW, 2017 WL 1356328, at *1 (E.D. Ky. Apr. 11, 2017).

Defendant Certain raises one objection to the Recommended Disposition. (Doc. # 28). Defendant objects to Judge Atkins's factual finding that the search of the jacket occurred in his presence. *Id*. at 1. Defendant then argues that because the evidence demonstrates the search occurred in his home after he was no longer present, it constituted an unlawful search. *Id*. at 4–5.

B.     **Defendant Certain's Location During the Jacket Search**

Defendant Certain objects to Judge Atkins's factual finding that, "the uncontradicted testimony from the hearing demonstrates that the search occurred in

5

Certain's presence, when he had already been handcuffed, and the search was incident to arrest." (Doc. # 28 at 1) (quoting (Doc. # 23 at 5)). Defendant argues continued searching of his residence after his removal from the scene was unlawful. Therefore, the factual issue of whether he was present at the time of the search is crucial to the question of whether the search was valid as incident to arrest or should be suppressed.

"The Fourth Amendment, which applies to the states through incorporation by the Fourteenth Amendment, protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Stricker v. Twp. of Cambridge*, 710 F.3d 350, 358 (6th Cir. 2013) (citing U.S. CONST. AMEND. IV). Given these Fourth Amendment protections, searches conducted without a warrant are "per se unreasonable, 'subject only to a few specifically established and well-delineated exceptions.'" *United States v. Goree*, 47 F. App'x 706, 712 (6th Cir. 2002) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). A search incident to a lawful arrest is one such exception. *United States v. McCraney*, 674 F.3d 614, 618 (6th Cir. 2012). A search incident to lawful arrest allows warrantless searches of "the arrestee's person and the area within his immediate control" immediately before or after a lawful arrest. *Id.* at 618–19 (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)) (internal quotations omitted). A search incident to arrest may extend beyond the arrestee's person to "the area 'within his immediate control,'" or "the area from within which he might gain possession of a weapon or destructible evidence." *Goree*, 47 F. App'x at 712 (quoting *Chimel*, 395 U.S. at 763). "However, the right to search an item incident to arrest exists even if that item is no longer accessible to the defendant at the time of the search. So long as the defendant had the item within his immediate control near the time of his arrest, the item remains

subject to a search incident to arrest." *Northrop v. Trippett*, 265 F.3d 372, 379 (6th Cir. 2001) (citations omitted).

Limits do exist, however. For search of property seized at the time of an arrest, the search cannot be too "remote in time or place from the arrest," as that would mean no exigency exists. *United States v. Chadwick*, 433 U.S. 1, 15 (1977), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991) (quoting *Preston v. United States*, 376 U.S. 364, 367 (1964)).

In his objections, Defendant relies upon *Arizona v. Gant*, 556 U.S. 332 (2009), for the proposition that police may search a vehicle incident to arrest only if the arrestee is *within reaching distance* of the passenger compartment at the time of the search or if the vehicle were to contain evidence of the crime of arrest. (Doc. # 28 at 2); *see also United States v. Lopez*, 567 F.3d 755, 756–58 (6th Cir. 2009). However, this rule has ordinarily been limited to the vehicle context. *United States v. Perdoma*, 621 F.3d 745, 752 (8th Cir. 2010) (quoting *Gant*, 556 U.S. at 343) ("The Court focuses exclusively on how the rule will affect *vehicle* searches, stating, for example: 'Because officers have many means of ensuring the safe arrest of vehicle occupants, it will be the rare case in which an officer is unable to fully effectuate an arrest so that *a real possibility of access to the arrestee's vehicle* remains.'"); *see also United States v. Shakir*, 616 F.3d 315, 319–21 (3d Cir. 2010) (advising a cautionary reading of *Gant* and noting handcuffing is not a "fail-safe method" of preventing arrestees from causing harm to police officers).

Within his Recommended Disposition, Judge Atkins made several important factual findings. More specifically, once Officer Homan attempted to arrest Defendant Certain; a struggle ensued between Officer Homan and Defendant, during which

Defendant removed his jacket and threw it upon the ground; Officer Homan "was faced with further securing" Defendant, who was still able to verbally warn another occupant of the home of the police presence; and Officer Homan "determine[d] the female's location before running to the front room to pick up Certain's jacket and discovered the money," while Certain was handcuffed in his presence. (Doc. # 23 at 6–7). In contrast, Defendant claims the testimony established that he was arrested, removed from the residence, and then his jacket was searched. (Doc. # 28 at 4). Reviewing Defendant's objection *de novo*, and upon examining the record in full, the Court concludes Judge Atkins's factual findings are correct.

First, Defendant highlights portions of Officer Homan's testimony that he argues indicate that he was not in the front room when the jacket pocket was searched. (Doc. # 28 at 2–3). Specifically, Defendant points to Officer Homan's testimony on direct examination, in which he explained the chronology of the incident. *Id*. at 2. Officer Homan testified as follows:

> So far as the timeline goes, he was placed in handcuffs. There was the issue of someone else is inside the house. And other people were coming to help me pretty quickly. And that was sort of gotten dealt with. Within immediately after that, the money was found. The baggy of marijuana, that was found within the first minutes of being inside that room. I saw it there. So the dogs are running around. It was someone else in the back bedroom. It was a little bit somewhat chaos.

(Doc. # 26 at 35:4–10). When subsequently asked which officer "eventually" took control of the Defendant, Officer Homan responded, "Officer Helms." *Id*. at 35:18–20. Defendant additionally points to Officer Homan's testimony upon cross examination, during which he conceded that he could not verify with certainty if Defendant was present in the front room

8

of the home during the jacket pocket search. (Doc. # 28 at 2–3). Specifically, Officer Homan acknowledged,

> I don't know if I can be that specific about it. I know that it was located in the first few minutes of this whole incident. And the furthest that Mr. Certain would be from the scene would have been in the driveway in a police car. But I have trouble remembering if it was while he was still standing there with us in Officer Helms' custody now, or if he had been walked out and put in a police car in the driveway.

(Doc. # 26 at 58:12–18).

Although Defendant identifies portions of Officer Homan's testimony that may raise some uncertainty about the exact timeline of events, Defendant fails to articulate how Officer Homan's testimony supports a finding opposite of that of Judge Atkins. Although Homan could not definitively state whether Defendant was present in the residence or in the police vehicle outside, when pressed, Homan did testify that his recollection was that Defendant was present in the residence upon the search of the jacket. *Id*. at 57–58. The totality of Officer Homan's testimony supports Judge Atkins's factual finding that the search occurred in Defendant's presence. Officer Homan described the situation as chaotic with everything happening "very quickly." Homan found the money in the jacket "within the first few minutes." *Id*. at 35:2–3. Although Homan cannot not definitively state Defendant's location in relation to the search of the jacket, his descriptions of the immediacy upon which he acted considering the hectic nature of the scene support a finding that the search occurred in Defendant's presence.

Next, Defendant points to Officer Helms's testimony about the jacket, in which he states that he could not recall where it was located, but speculated that it was "laying somewhere in the house, I think directly in front of us. I don't recall if it was on the floor or on the chair or whatever, the couch or something here." (Doc. # 28 at 3) (quoting (Doc.

9

# 26 at 15:24–16:4)).  Additionally, when asked if he had "observed any officer, law enforcement officer or animal control officer, look inside the pockets of the coat" before he removed Defendant from the residence and placed him in the police vehicle, Officer Helms testified that he had not.  *Id*. (quoting (Doc. # 26 at 16:5–13).  Similarly, here, Defendant directs the Court to evidence which fails to fully support a finding that the search occurred outside of Defendant's presence.  In considering this brief portion of testimony in light of all of the evidence, it does not support a finding that the search occurred outside of Defendant's presence.  Rather Officer Helms reiterates that he does not clearly remember seeing certain items because he was "on control," meaning he had physical control of Defendant and stood near the front door between Defendant and Officer Homan.  (Doc. # 26 at 15:3–16:15).

Lastly, Defendant urges the Court to view the testimony in light of Officer Homan's police report which describes Officer Helms taking "control of Certain and transport[ing] him to BCDC," and then in the next sentence, states that "[o]fficers began making a wing span search of where [C]ertain was arrested at," upon which the marijuana and cash in the jacket pocket were found.  (Doc. # 28 at 4) (quoting (Doc. # 19-2 at 6)).  Defendant's argument here about reading the police report chronologically would only further support Judge Atkins's finding, rather than his own, as the following lines in the police report refer to Defendant's behavior *inside* of the residence, rather than outside in the police vehicle.  *See* (Doc. # 19-2 at 6) (stating that "Certain was yelling for a female towards the rear of the residence during the struggle" despite the earlier sentence that he had been placed in a police vehicle and transported to a detention facility).

To summarize, Defendant ultimately fails to identify sufficient evidence that the search of his jacket did not occur in his presence. Officer Homan's best recollection, that the search of the jacket pocket occurred in Defendant's presence, (Doc. # 26 at 57–58), his description that he "dealt with" the situation in the back room, and "immediately after that, the money was found," *see* (Doc. # 26 at 35:4–10), and his description of Officer Helms gaining control over Defendant Certain after the search, (Doc. # 26 at 35:18–20), all support Judge Atkins's finding. From testimony of the chaotic nature of the scene, Judge Atkins found it reasonable to find Officer Homan's testimony credible, as his quick search into Defendant's jacket pocket occurred "for the purpose of ensuring the officer's safety in this rapidly developing situation while simultaneously preserving evidence from destruction, whether from Certain, the unknown female, or the pit bulls roaming free within the residence." (Doc. # 23 at 7).

After making these factual findings, Judge Atkins then correctly applied the proper legal standard for a search incident to lawful arrest. As Defendant was in the front room with police officers, a warrant was not needed to search "the area within his immediate control" immediately after his lawful arrest. *See Chimel*, 395 U.S. at 763; *see Goree*, 47 F. App'x at 712. Although Defendant was handcuffed, Judge Atkins rightfully found the exigency still existed to allow search, due to the Defendant still being close by to the jacket he had discarded, pit bull dogs roaming around, and an unidentified person in another room in the house. *See Chadwick*, 433 U.S. at 15; *see United States v. Dillard*, 78 F. App'x 505, 512 (6th Cir. 2003) ("The mere fact that an arrestee has been subdued and handcuffed in no way signals the end of exigent circumstances, and cannot preclude a search of the arrestee's person and surrounding area.").

11

Furthermore, as the jacket was within Defendant's immediate control "near the time of his arrest," his being handcuffed and under the control of officers such that the jacket was no longer accessible to him did not destroy the right to search. *See Northrop*, 265 F.3d at 379 (allowing the search of a duffel bag after a defendant had removed the bag from his shoulder, placed it at his feet, and was already arrested); *see also Dillard*, 78 F. App'x 513 (6th Cir. 2003) ("When the police approached Dillard to arrest him, he was carrying a briefcase, which he then discarded. After police arrested and subdued a violently struggling Dillard, they then searched the briefcase he had originally been carrying. This action epitomizes the doctrine of search incident to arrest."). Rather than address the issue of exigencies that existed throughout the brief but chaotic scene, Defendant has mistakenly focused solely on his location in relation to the search, arguing that his removal from the home would have destroyed the power to search. *See generally* (Doc. # 28).

Accordingly, Defendant's Objection to Judge Atkins's factual finding that he was present during the search of the jacket, and therefore was a proper search incident to lawful arrest, is **overruled**.

### III. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) The Magistrate Judge's Recommended Disposition (Doc. # 23) is hereby **adopted**;

(2) Defendant Certain's Objection (Doc. # 28) to the Recommended Disposition is **overruled**; and

(3) Defendant Certain's Motion to Suppress (Doc. # 14) is **denied**;

(4) The time period between the filing of the motion and this order, totaling 68 days, is excluded from the provisions of the Speedy Trial Act. *See* 18 U.S.C. § 3161(h)(1)(D); and

(5) This matter is scheduled for a Status Conference on **Monday, March 23, 2020 at 10:30 a.m. in Ashland**.

This 11th day of March, 2020.

Signed By:
*David L. Bunning*
**United States District Judge**

J:\DATA\ORDERS\Ashland Criminal\2019\19-13 Order Adopting Recommended Disposition.docx